**IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court.**

RECEIVED
IN ALEXANDRIA, LA

JUL - 7 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| VAUGHN JULIEN,<br>        Appellant | CIVIL ACTION<br>SECTION "P"<br>NO. 08-cv-1016 |
| VERSUS | |
| ALFONZO PACHECO, et al.,<br>        Appellee | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This matter was referred to the undersigned Magistrate Judge for report and recommendation in accordance with a standing order of this court.

Facts and Procedural History

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Vaughn Julien ("Julien")[1] on July 10, 2008 and amended (Doc. 4). The remaining defendants are Alfonzo Pacheco (a medical doctor employed at Winn Correctional Center ("WCC") in Winnfield, Louisiana), Laurie Howard (an LPN  employed at WCC), Carla Burke (an LPN

---

[1] Vaughn Julien's name also appears in the case at bar as "Julien Vaughn" because he signed his pleadings both ways. According to a Louisiana Department of Corrections record filed by defendants (Doc. 34), Julien's correct name is "Vaughn R. Julien."

employed at WCC), and Lesia Coleman (an LPN employed at WCC).[2]
Julien alleges that, while he was incarcerated in WCC in November
2007, he was denied medical care for an infected spider bite.  For
relief, Julien asks for a jury trial and monetary damages.

Julien contends that he was bitten on his left ankle by a
poisonous spider on November 9, 2007, and he made a "medical
emergency" that day because the wound became swollen and "black and
green" (Doc. 4).  Julien contends LPN Howard examined the wound and
gave him instructions on how to clean it (Doc. 4).  Julien further
contends he made a second sick call on November 10, 2007 because
the wound was infected and draining; he was attended by LPN
Coleman.  Julien alleges Coleman did not provide any medical care,
antibiotics or topical ointment, but instead tried to bribe him
into not filing a grievance against the medical department (Doc.
4), and promised to send him a "pill pass" but never did so (Doc.
4).  On November 13, 2007, Julien showed the deep wound to Warden
Wilkinson when he was in Julien's cell block and Wilkinson promised
to get him medical help, but Julien still did not receive any
medical care (Doc. 4).  Later that day, Julien fell due to fever,
so LPN Jones and an orderly took him to the infirmary (Doc. 4).
Julien contends LPN Burke stated she could see Julien's ankle bone

---

[2] Julien's claims against defendants Pat Thomas, Time
Wilkinson, Correctional Corporation of America, and Winn
Correctional Center were dismissed and they have been dismissed
from this action (Doc. 17).

at the bottom of the wound and said she would have Dr. Pacheco write him a pill pass for antibiotics; Julien states he did not received the antibiotics and was not seen by Dr. Pacheco (Doc. 4). Julien contends his ankle is half-healed and he limps heavily (Doc. 4).

Laura Burke was not served because she is no longer employed at WCC and no forwarding address was provided. Accordingly, I will recommend that the complaint against Burke be dismissed without prejudice under Fed.R.Civ.P. 4(m). See <u>McGinnis v. Shalala</u>, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); <u>Systems Signs Supplies v. U.S. Dept. of Justice</u>, 903 F.2d 1011, 1013 (5th Cir. 1990); <u>Kersh v. Derosier</u>, 851 F.2d 1509, 1512 (5th Cir. 1988).

The remaining defendants, Pacheco, Howard and Coleman, answered the complaint (Doc. 19). Julien filed a motion for summary judgment (Doc. 27), to which defendants filed a brief in opposition which is unsupported by any summary judgment evidence (Doc. 29). Julien's motion is now before the court for consideration.

Law and Analysis

<u>The Law of Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Stewart v. Murphy</u>, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999),

4

and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

All evidence must be considered, but the court does not make credibility determinations.  If the movant fails to meet its initial burden, summary judgment should be denied.  Little, 37 F.3d at 1075.

## Denial of Medical Care

Julien contends Dr. Pacheco, LPN Howard, and LPN Coleman denied him medical care for his infected spider bite wound, a serious medical need.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976).  The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994).  Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a difference of medical opinion between the prison's medical staff and the inmate about what medicines or treatments the inmate should be receiving, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).  A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care.  Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive *adequate* medical care.  A prison inmate can demonstrate an Eighth Amendment violation by showing that a

prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 463-464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

In the case at bar, Julien contends in his motion for summary judgment that, on November 9, 2007, he went to the medical department for a spider bite on his ankle, for which LPN Jones simply referred him to the doctor. On November 10, 2007, Julien made a medical emergency for the spider bite, and the infirmary noted a small pustule on Julien's left ankle, edema in the ankle and side of his outer foot with redness, and "slight warmth" to touch; he was instructed to apply heat, practice good hygiene when drainage occurs, and follow up through sick call if drainage started (Doc. 27, Ex. 2). Julien further contends in his motion for summary judgment and his medical records show that, on November 13, 2007, LPN Jones referred him to Dr. Pacheco (Doc. 27, Ex.1). Julien's medical records show that LPN Jones noted a 1 cm open drainage area and major edema in his left foot and his blood pressure was 111/91; LPN Jones referred him to the doctor, and gave him a seven day lay-in pass and a seven day Motrin pill pass (Doc. 27, Ex. 3).

Julien's medical records show he made another medical

7

emergency on November 14, 2007 for dizziness and left foot pain; Julien's blood pressure was 164/100 (Doc. 27, Ex. 4).  Dr. Pacheco examined Julien and noted infection, soft tissue swelling and a lesion, ordered that Julien's blood pressure be monitored, that he lay-in for seven days, and that he be given Bactrim antibiotic for seven days (Doc. 27, Exs. 4-6).

Julien's medical records furthers show that, on November 21, 2007, Dr. Pacheco saw Julien as a follow-up for his cellulitis on the left foot secondary to an insect bite with residual soft tissue swelling, and ordered that Julien's dressing be changed for seven days and he continue to apply local heat (Doc. 27, Exs. 6 & 7).  On November 23, Dr. Pacheco ordered that Julien's blood pressure be monitored weekly for one month (Doc. 27, Ex. 6).

In January 2008, Julien asked to see the doctor because his ankle was still hurting (Doc. 27, Exs. 7, 12, 13).  RN Keiffer evaluated Julien on July 12, 2009 and stated no treatment was necessary at that time (Doc. 27, Ex. 13).

On July 19 and 25, 2008, Julien made two more sick calls about the unhealed wound on his left ankle which was causing chronic pain (Doc. 27).  On July 23, 2008, Dr Pacheco noted that Julien's ankle was healing and he did not want treatment at that time, but ordered that Julien's blood pressure be monitored (Doc. 27, Ex. 10).  On July 25, 2008, Dr. Pacheco noted complaints of chronic pain and weakness in the left ankle for the last five months, found Julien

8

did not have a deformity, had a full range of motion, and had a normal gait, and diagnosed arthralgia of the left ankle (Doc. 27, Ex. 11). On July 28, 2008, Julien made a written request asking why he had to get an ankle brace from home (Doc. 27, Ex. 11)). LPN Coleman responded to that request on August 12, 2008 with a question mark (Doc. 27). Julien contends he has a permanent limp, his ankle is still draining pus, and Dr. Pacheco refuses to send him to an outside doctor (Doc. 27).

In his statement of undisputed facts, Julien shows he was not examined by Dr. Pacheco until November 21, 2007,[3] and Dr. Pacheco refuses to send him to an outside specialist (Doc. 287). Julien further states in his statement of undisputed facts that the medical department told him to get an ankle support brace from home, and that he is forced to stand and work in the kitchen despite his foot injury (Doc. 27).

Defendants have not filed any summary judgment evidence with their brief (Doc. 29). In their brief, defendants essentially argue that Julien has not stated a claim against Dr. Pacheco, LPN Howard, or LPN Coleman. However, as already found by this court in the initial Report and Recommendation, Julien has stated a claim for denial of medical care against these defendants (Doc. 14). In support of his motion for summary judgment, Julien filed a

---

[3] Julien erroneously wrote "November 21, 2008" in his statement of undisputed facts (Doc. 27).

statement of undisputed facts and medical evidence which defendants have chosen not to oppose.

Julien's evidence shows that he developed an infection in his left ankle, apparently after being bitten by an insect or spider on November 9, 2007. From Dr. Pacheco's notes, it is clear that Julien's ankle wound was still not completely healed on July 23, 2008.

In Bayete v. Ricci, 2009 WL 2066879 (D.N.J. 2009), the court found the plaintiff stated an Eight Amendment claim against prison officials for a three week delay in providing medical care for an infected spider bite which turned into cellulitis, a potentially fatal bacterial infection. The plaintiff in that case continued to suffer from foot pain as a result of contracting cellulitis and the delay in treating it. See also, Ford v. LeMire, 2004 WL 1234137, *4 (E.D.Mich. 2004)(noting that, although a spider bite sometimes results in serious medical complications such as a systemic infection, a delay in treating a bite does not satisfy the objective component of an Eighth Amendment violation where the plaintiff suffers only minor discomfort and a fever); Lamb v. Norris, 2006 WL 2501505 (E.D.Ark. 2006)(plaintiff did not present any evidence of having suffered an injury from a one-day delay in treatment for a spider bite); Ybarra v. Lacy, 2006 WL 334555 (N.D.Tex. 2006)(where prison nurses who took a culture, prescribed ibuprofen, applied ice packs, and scheduled an appointment with the

doctor when he returned in three days, for inmate who reported to the infirmary with a spider bite, inmate failed to prove the nurses were deliberately indifferent to his serous medical needs).

In the case at bar, Dr. Pacheco diagnosed Julien with cellulitis, a very serious bacterial infection, secondary to an insect bite. Julien contends Coleman and Howard did not provide him with medical care during his initial trips to the infirmary, despite his elevated blood pressure, fever, drainage, heat, and edema. Julien contends he did not receive medical care until Dr. Pacheco examined him on November 14, 2007 and prescribed antibiotic ointment. However, LPNs who do not have the authority to diagnose or prescribe. Since defendant-LPNs Coleman and Howard did the only thing they could for Julien by referring him to the doctor, they cannot be held liable to Julien for failing to do more, such as prescribe him antibiotics.[4] Therefore Julien's motion for summary judgment should be denied.

Julien complains that Dr. Pacheco refuses to send him to an outside doctor, despite the fact that he contends his left ankle was still swelling, discolored, and draining on November 21, 2008 (Doc. 30). However, Julien does not allege that Dr. Pacheco has failed to provide medical care; instead, he alleges a disagreement

---

[4] The problem with staffing an infirmary with LPNs is that they do not have the training and authority to diagnose medical conditions or to prescribe medication. The responsibility for staffing, however, lies with the medical director or the warden.

11

as to the type of medical care he received.[5]  Since a disagreement

as to the type of medical care an inmate receives does not state an

Eighth Amendment claim, as set forth above, Julien's motion for

summary judgment against Dr. Pacheco should be denied.[6]

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that

Julien's motion for summary judgment (Doc. 27) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from

service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another

party's objections within **fourteen (14) days** after being served

with a copy thereof.  A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District

Judge at the time of filing.  Timely objections will be considered

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

---

[5] The court is aware that Dr. Pacheco is no longer employed
at WCC.

[6] As stated above, defendants did not filed anything in
opposition to Julien's motion for summary judgment except a
brief.  In that brief, they suggest to the court that Julien has
not stated a claim against Dr. Pacheco, Howard, and Coleman (Doc.
29).  However, defendants failed to file a motion of their own,
and have not asked this court to dismiss the action against them.

WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _6th_ day of June, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

13